UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUISIANA RESTAURANT ASSOCIATION, INC.<br><br>VERSUS<br><br>CERTAIN UNDERWRITERS AT LLOYDS, LONDON and AFFINITY INSURANCE SERVICES, INC. | CIVIL ACTION<br><br>NO. 21-1718<br><br>SECTION M (5) |

## ORDER & REASONS

Before the Court is a motion by plaintiff Louisiana Restaurant Association, Inc. ("LRA"), pursuant to 28 U.S.C. § 1447(c), to remand the captioned civil action to the state court from which it was removed.[1] Defendant Certain Underwriters at Lloyd's, London ("Lloyd's") responds in opposition,[2] as does defendant Affinity Insurance Services, Inc. ("Affinity").[3] LRA replies in further support of its motion,[4] and Affinity submits a surreply in further opposition.[5] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting LRA's motion to remand for lack of subject-matter jurisdiction because the citizenship of each individual member or underwriter (customarily known as a "name") subscribing to the subject Lloyd's insurance policy – and made a party defendant to this suit – is relevant in determining diversity jurisdiction and defendants fail to provide such information in support of removal.

---

[1] R. Doc. 16.
[2] R. Doc. 17.
[3] R. Doc. 18.
[4] R. Doc. 22.
[5] R. Doc. 25.

1

**I.     BACKGROUND**

This case concerns a breach-of-contract claim involving an insurance policy. Toward the end of 2019, LRA purchased a policy of insurance for event cancellation, which policy was secured by Affinity and issued through Lloyd's.[6] LRA planned to host its "showcase," an annual trade association event, at the Ernest N. Morial Convention Center in New Orleans, Louisiana, on August 1-2, 2020.[7] Prior to the event, LRA was notified that the convention center would not be available for the showcase because it was being utilized as an overflow medical care facility for COVID-19 patients.[8] An executive order issued by Louisiana Governor John Bel Edwards also limited attendance for indoor gatherings at that time.[9] LRA postponed and later cancelled the event.[10] Thereafter, on October 22, 2020, a representative of LRA submitted a notice of claim to Lloyd's seeking coverage under the event cancellation policy.[11] On April 14, 2021, a Lloyd's representative issued a coverage determination letter to LRA, denying LRA's claim under exclusion 8.8 of the policy, which is dubbed the "infectious or communicable disease in humans" exclusion.[12] LRA filed this case against both Affinity and "Certain Underwriters at Lloyd's, London Subscribing to Policy No. CR0315027" in the Civil District Court for the Parish of Orleans, State of Louisiana, seeking coverage under the policy, which was attached as an exhibit to the complaint.[13] Affinity removed the case to this Court, asserting diversity subject-matter jurisdiction.[14]

---

[6] R. Docs. 1 at 2; 1-5 at 2-3, 10-33; 17 at 3.
[7] R. Doc. 1-5 at 3.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at 3-4.
[12] *Id.* at 4, 34-39.
[13] *Id.* at 2, 7, 11-33.
[14] R. Doc. 1 at 1, 5.

**II.     PENDING MOTION**

LRA argues that this Court lacks diversity jurisdiction over the action.[15] It contends that Affinity, as the removing party, has the burden of proving the basis for jurisdiction but that it failed to allege in its notice of removal sufficient jurisdictional facts.[16] Specifically, LRA argues that the notice of removal fails to allege the citizenship of the individual members/underwriters/names making up the four syndicates that subscribe to the Lloyd's policy at issue.[17]

In opposition, Lloyd's argues that the lead underwriter of the policy, Beazley Underwriting Ltd. ("Beazley"), is the "real party in interest" because a service-of-suit clause in the Lloyd's policy makes all subscribing underwriters liable for a judgment entered against Beazley, so its citizenship is all that matters.[18] In other words, the citizenship of the remaining names (that is, the names other than Beazley) should not be considered in determining diversity.[19] Lloyd's argues that the relevant parties are completely diverse and that the case was properly removed to this Court because LRA is a citizen of Louisiana, Affinity is a citizen of Pennsylvania and Illinois, and Beazley is a citizen of the United Kingdom.[20] In the alternative, Lloyd's asks this Court to dismiss the diversity-destroying remaining names as dispensable, leaving Beazley as the sole Lloyd's underwriter defendant.[21] In its opposition memorandum, Affinity echoes Lloyd's argument that this Court should consider only Beazley's citizenship.[22]

---

[15] R. Doc. 16-1 at 1.
[16] *Id.* at 5, 10-11.
[17] *Id.* at 7-8, 10. LRA also argues that the notice of removal fails to establish the requisite amount in controversy for each name as would support diversity jurisdiction. *Id.* at 9-10.
[18] R. Doc. 17 at 2, 5-6.
[19] *Id.*
[20] *Id.* at 14-15.
[21] *Id.* at 19-20.
[22] R. Doc. 18 at 2, 3-6. Affinity and Lloyd's also urge that an adequate amount in controversy is alleged for jurisdictional purposes, R. Docs. 18 at 6-7; 17 at 15-17, but this argument need not be addressed since the Court holds that diversity of citizenship is lacking. Affinity argues further that this Court should exercise supplemental jurisdiction over the claims against Lloyd's even if the amount-in-controversy threshold is not established as to Lloyd's. R. Docs. 18 at 8-11; 25 at 1-2. Again, however, because complete diversity of citizenship is lacking, it is unnecessary to reach this issue.

In reply, LRA argues that all of the names subscribing to the policy are defendants and real parties in interest because, as plaintiff, LRA chose to bring its claims against all of them and each is liable under the policy to the extent of its individual subscription.[23] Therefore, LRA argues that the citizenship of each name must be considered in the jurisdictional analysis.[24] It also rejects Lloyd's alternative argument that this Court should dismiss the names other than Beazley, maintaining that such an act must be done voluntarily by a plaintiff, which LRA says it will not do.[25]

### III. LAW & ANALYSIS

#### A. Removal Standard

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Subject-matter jurisdiction must exist at the time of removal to federal court, based on the facts and the allegations contained in the complaint. *St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250 1253 (5th Cir. 1998). Because federal courts have limited jurisdiction, the removal statute is strictly construed, and any ambiguities are construed against removal and in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The party seeking removal has the burden of establishing that federal jurisdiction exists, and that removal was proper. *Id.*

District courts have subject-matter jurisdiction over civil actions where (1) "the matter in controversy exceeds the sum or value of $75,000" and (2) there is complete diversity of citizenship among the parties. 28 U.S.C. § 1332(a). "Complete diversity requires that all persons on one side

---

[23] R. Doc. 22 at 2-5.
[24] *Id.*
[25] *Id.* at 5.

of the controversy be citizens of different states than all persons on the other side." *Bynane v. Bank of N.Y. Mellon for CWMBS, Inc. Asset-Backed Certificate Series 2006-24*, 866 F.3d 351, 355 (5th Cir. 2017) (quoting *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017)) (alteration omitted). A corporation is a citizen of both the state in which it is incorporated and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). The citizenship of a limited liability company is determined by the citizenship of all of its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). "So, to establish diversity jurisdiction, a party 'must specifically allege the citizenship of every member of every LLC.'" *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019) (quoting *Settlement Funding*, 851 F.3d at 536). An unincorporated association has no separate legal identity so its citizenship, at least for purposes of diversity jurisdiction, is the citizenship of each of its members. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (holding concerning citizenship of partnership).

**B. Analysis**

The Lloyd's of London insurance market, which creates a jurisdictional conundrum for federal courts sitting in diversity, has been explained by the Fifth Circuit as follows:

> Lloyds of London is not an insurance company but rather a self-regulating entity which operates and controls an insurance market. The Lloyd's entity provides a market for the buying and selling of insurance risk among its members who collectively make up Lloyd's. Thus, a policyholder insures *at* Lloyd's but not *with* Lloyd's.
>
> The members or investors who collectively make up Lloyd's are called "Names" and they are the individuals and corporations who finance the insurance market and ultimately insure risks. Names are underwriters of Lloyd's insurance and they invest in a percentage of the policy risk in the hope of making return on their investment. Lloyd's requires Names to pay a membership fee, keep certain deposits at Lloyd's, and possess a certain degree of financial wealth. Each Name is exposed to unlimited personal liability for his proportionate share of the loss on a particular policy that the Name has subscribed to as an underwriter. Typically hundreds of

5

> Names will subscribe to a single policy, and ***the liability among the Names is several, not joint***.
>
> Most Names or investors do not actively participate in the insurance market on a day to day basis. Rather, the business of insuring risk at Lloyd's is carried on by groups of Names called "Syndicates." In order to increase the efficiency of underwriting risks, a group of Names will, for a given operating year, form a "Syndicate" which will in turn subscribe to policies on behalf of all Names in the Syndicate. A typical Lloyd's policy has multiple Syndicates which collectively are responsible for 100 percent of the coverage provided by a policy. The Syndicates themselves have been said to have no independent legal identity. Thus, a Syndicate is a creature of administrative convenience through which individual investors can subscribe to a Lloyd's policy. A Syndicate bears no liability for the risk on a Lloyd's policy. Rather, ***all liability is born[e] by the individual Names who belong to the various Syndicates that have subscribed to a policy***.
>
> Each Syndicate appoints a managing agent who is responsible for the underwriting and management of each Name's investments. The managing agent receives this authority through contracts with each Name. The managing agent, which is typically a legal entity, appoints one of its employees to serve as the "active" underwriter for the Syndicate. The active underwriter selects the risks that the Names in the syndicate will underwrite and has the authority to bind all Names in the Syndicate. The active underwriter has the authority to buy and sell insurance risks on behalf of all Names in the syndicate, and to bind the Syndicate members in these transactions.
>
> In practice, since many Names through their respective Syndicates are liable on a Lloyd's policy, the active underwriter from *one* of the underwriting Syndicates is designated as the representative of *all* the Names on the policy. This single underwriter, called the "lead" underwriter on the policy, is usually the only Name disclosed on the policy with all other Names remaining anonymous. The lead underwriter is typically the first to subscribe to the policy and typically assumes the greatest amount of risk. The Lloyd's corporate entity maintains records on the identity and last known residence of Names insuring risk in the Lloyd's market. That information is kept strictly confidential.
>
> ***In sum, while an insured receives a Lloyd's "policy" of insurance, what he has in fact received are numerous contractual commitments from each Name who has agreed to subscribe to the risk. The Names are jointly and severally obligated to the insured for the percentage of the risk each has agree to assume***.

*Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 857-59 (5th Cir. 2003) (internal citations omitted; italicized emphasis in original; bolded emphasis added).

"Federal courts have reached two very different results when determining the citizenship of a Lloyd's syndicate." 13F CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3630.1, at 251 (3d ed. 2009). Most courts to consider the issue have held that "an underwriting syndicate [is] a citizen of all jurisdictions in which its individual investors, known as 'Names,' [are] citizens, not only of the jurisdiction of the underwriter who acted as a managing agent." *Id.*; *see, e.g.*, *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1081 (11th Cir. 2010) (holding that "the pleading of every member's citizenship is essential to establishing diversity jurisdiction") *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930, 936-37 (2d Cir. 1998) ("[E]ach and every Name whom the lead underwriter represents must be completely diverse."); *Ind. Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 317 (7th Cir. 1998) (holding that each name must be diverse). While arriving at this same conclusion, courts have used different reasoning. The Second Circuit has held that each and every name is a "real party to the controversy" when a Lloyd's underwriter is sued in its representative capacity, while the Seventh Circuit has likened a Lloyd's syndicate to a partnership, requiring each name to meet the diversity requirement, as is true for each partner of a partnership. *Compare E.R. Squibb*, 160 F.3d at 936-37 ("federal courts must look at the individuals being represented rather than their collective representative to determine whether diversity of citizenship exists") (quotation omitted) *with Ind. Gas*, 141 F.3d at 319 (following *Carden* and applying its framework of analysis). Thus, "[f]ederal courts across the nation have agreed, though through different rationales, that when determining the diversity of citizenship of the parties in a case involving Lloyd's of London, all the 'names' must be taken into consideration." *Johnson v. Certain Underwriters at Lloyd's London*, 2009 WL 3232006, at *3 (E.D. La. Oct. 2, 2009) (adopting as its holding the "majority view" that the citizenship of all names must be considered

for purposes of diversity jurisdiction) (collecting cases). Against this majority view, the Sixth Circuit has held that a Lloyd's syndicate is only a citizen of the state in which its lead underwriter is a citizen. *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 42-44 (6th Cir. 1994) (reasoning that the lead Lloyd's underwriter was the agent for undisclosed principals – that is, the remaining names – under Tennessee law).

The Fifth Circuit has not expressly addressed the question of Lloyd's citizenship for purposes of diversity jurisdiction. However, courts within this circuit, including other sections of this Court, have done so. For example, in *McAuslin v. Grinnell Corporation*, the district court dismissed the case for lack of subject-matter jurisdiction, observing that "[t]he majority of courts that have addressed this issue have found that each Name must be diverse." 2000 WL 1059850, at *4 (E.D. La. Aug. 1, 2000) (collecting cases). The court reasoned that a Lloyd's "syndicate has enough organizational structure and economic integration to be [treated as] an unincorporated association" under the Supreme Court's *Carden* decision, which held that the citizenship of each member of an unincorporated association (there, a partnership) must be taken into account in determining diversity jurisdiction. The *McAuslin* court specifically rejected the Sixth Circuit's analysis in *Layne* "because the court's reasoning was based on peculiar rules of [Tennessee] state agency law that do not apply in [a Louisiana] diversity case." *Id*.

Here, Lloyd's asks this Court to follow *Layne*, urging that Louisiana agency law with respect to undisclosed principals is substantially similar to Tennessee's. However, this Court declines the invitation, agreeing rather with the *McAuslin* court's rationale for rejecting *Layne* and for the additional reason that applying agency law to hold the lead underwriter answerable for all liability under the insurance policy would undermine the Lloyd's structure which makes each underwriter/member/name liable for its own subscribing share. Lloyd's seeks to avoid this

8

outcome by invoking the service-of-suit clause of the policy, but the clause cannot be read to override LRA's right as plaintiff to pursue each name as a party defendant for its individual share of liability under the policy. Instead, the clause permits liability to be distributed among the subscribing underwriters, in accordance with their proportionate shares, even when a plaintiff chooses not to sue all names but, instead, to pursue a lead underwriter, in its individual capacity, as the lone defendant. *See, e.g., Corfield*, 355 F.3d at 861-62 (discussing *E.R. Squibb & Sons Inc. v. Accident & Cas. Ins. Co,* 1999 WL 350857, at *5, 13 (S.D.N.Y. June 2, 1999) (approving, on remand, substitution of different Lloyd's name as defendant in an individual capacity, in place of underwriter previously sued in a representative capacity), *aff'd*, 241 F.3d 154 (2d Cir. 2001)).[26]

In another example from the Eastern District of Louisiana, the removing defendants in *Certain Underwriters at Lloyd's London Subscribing to Policy No. B066421355A04 v. Washington* argued that only the lead underwriter's citizenship was relevant to determine diversity jurisdiction because the remaining names were merely "nominal parties." 2009 WL 5215927, at *3 (E.D. La. Dec. 28, 2009). The Lloyd's underwriters responded that each name's citizenship must be considered, and the court agreed, holding that the names were the real parties to the controversy because "'the lead underwriters are not appearing in their individual capacity, but as representatives of the Names behind the policies, and therefore each of the Names must be considered for purposes of diversity jurisdiction.'" *Id.* at *4-5 (agreeing with "multiple other jurists of the Eastern District of Louisiana and other Circuit Courts that the citizenship of the Names, as the real parties to the controversy, must be considered for purposes of diversity of citizenship jurisdiction," and quoting *Certain Underwriters at Lloyd's of London Syndicates v.*

---

[26] For additional discussion of the difference this distinction makes, see *Prime Prop. & Cas. Ins. Inc. v. Elantra Logistics LLC*, 2021 WL 4066737, at *2-3 (S.D.N.Y. Sept. 7, 2021) (dismissing case for failure to sufficiently plead diversity jurisdiction where citizenship of all Lloyd's names was not pleaded, notwithstanding presence of service-of-suit clause binding all names to result of suit).

9

*Travelers Indem. Co.*, 2006 WL 1896341, *2 (W.D. Wash. July 7, 2006)).  Other sections of this Court have come to this same conclusion.  *See, e.g.*, *Jefferson v. Am. Sugar Refin., Inc.*, 2017 WL 894652, at *3 (Mar. 7, 2017) (holding that complete diversity was not established given failure to allege citizenship of all names underwriting Lloyd's policy); *Advanced Sleep Ctr., Inc. v. Certain Underwriters at Lloyd's London,* 2015 WL 4097069, at *2 (E.D. La. July 7, 2015) (holding that "the Names are the 'real' parties to this action, and their citizenship must be distinctly and affirmatively set forth or established by proof"); *Rips, LLC v. Underwriters at Lloyd's London,* 2015 WL 2452339, at *3 (E.D. La. May 21, 2015) (holding that citizenship of Lloyd's names was not satisfactorily pleaded to support diversity jurisdiction); *Johnson*, 2009 WL 3232006, at *3-4 (holding that the citizenship of all names must be considered for purposes of diversity jurisdiction); *St. Charles Prop. Ass'n v. Certain Underwriters at Lloyd's London*, 2009 WL 3232034, *4 (E.D. La. Oct. 2, 2009) (same); *Walle Bldg. Condo. Ass'n v. Certain Underwriters at Lloyd's London*, 2008 WL 4412250, at *2-3 (E.D. La. Sept. 18, 2008) (dismissing case for lack of subject-matter jurisdiction where plaintiff failed to carry its burden of establishing that all names subscribing to the policy were diverse).

      The Fifth Circuit's holding in *Corfield v. Dallas Glen Hills LP*, upon which Lloyd's relies here, is easily distinguishable from the present matter.  In *Corfield*, a syndicate's lead underwriter filed an action in federal court on behalf of itself and the syndicate's other underwriters against a Texas partnership.  355 F.3d at 855-56.  The partnership challenged the court's subject-matter jurisdiction, and the lead underwriter amended its complaint to sue solely on its own behalf.  *Id.* at 856.  Because the lead underwriter was suing on its own behalf, the Fifth Circuit held that the citizenship of the names not made party to the case were not relevant in determining whether the parties were completely diverse.  *Id.* at 864; *see also Chem. Leaman Tank Lines, Inc. v. Aetna Cas.*

10

*& Sur. Co.*, 177 F.3d 210, 223 (3d Cir. 1999) (holding that if a lead underwriter is sued in its individual capacity, only its citizenship is considered when determining diversity jurisdiction). Thus, in *Corfield*, the Fifth Circuit did not address the issue before this Court – namely, whether the citizenship of each of the non-lead underwriters is relevant for purposes of diversity jurisdiction when a plaintiff files suit against *all of them*. Here, LRA sued all names subscribing to the Lloyd's policy.[27] As a result, under the majority view prevailing in courts around the country and in this Court, the citizenship of each subscribing name is relevant to the jurisdictional analysis because each name bears its own proportionate liability under the applicable insurance policy, each name is a party defendant, and each name is thus a real party in interest. Had LRA chosen to pursue its claim against a single underwriter, such as Beazley, as the sole defendant, then the other names might not have been relevant for jurisdictional purposes, but that is not the case now before this Court.

Lloyd's attempts to meet its burden of proving the existence of federal jurisdiction by asking this Court to dismiss the non-diverse parties.[28] Rule 21 of the Federal Rules of Civil Procedure gives courts the discretionary power to dismiss parties if they are misjoined, but a court "must 'sparingly' exercise its authority and 'carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation.'" *McAuslin*, 2000 WL 1059850, at *5 (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 838 (1989)). Because the Lloyd's names are real parties in interest, with each responsible for its own subscribed share of liability under the insurance policy, they cannot be said to have been misjoined as defendants by LRA and the Court will not dismiss them. *See* 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1683 (4th ed. 2019). Additionally,

---

[27] R. Doc. 1-5 at 1.
[28] R. Doc. 17 at 19.

while "the voluntary dismissal of a non-diverse party after removal can cure a lack of complete diversity as of the time an action is removed," LRA has made clear that it will not voluntarily dismiss the non-diverse parties.[29] *Tyler v. State Farm Lloyds*, 2014 WL 12678306, at *4 (N.D. Tex. Nov. 10, 2014) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73 (1996)).

In sum, LRA sued all names subscribing to the Lloyd's policy. Thus, the citizenship of each name is relevant to the diversity jurisdiction analysis. In its notice of removal, Affinity alleged that "Lloyd's is a foreign insurer and, based upon the information available to Affinity, no relevant syndicate comprising Lloyd's has any individual or corporate members who are citizens of Louisiana for federal diversity purposes."[30] The notice of removal does not include allegations concerning the citizenship of the names subscribing to the policy. As a result, Affinity has not met its burden of establishing diversity jurisdiction, and this Court must remand the case to state court.[31]

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that LRA's motion to remand (R. Doc. 16) is GRANTED.

New Orleans, Louisiana, this 23rd day of November, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[29] R. Doc. 22 at 5.
[30] R. Doc. 1 at 5-6.
[31] LRA asks the Court to award costs and attorney's fees under 28 U.S.C. § 1447(c) on the grounds that the removal was objectively unreasonable. Because Affinity and Lloyd's advance good-faith arguments in support of the removal, the Court declines to award costs or fees, notwithstanding its decision to remand the case.